In re the Matter of Billy CARNAHAN, William Carnahan, Sr. and Judy Carnahan, Appellants–Judgment Defendants Below,

v.

The STATE of Indiana, Appellee–Plaintiff Below.

No. 32A01–8912–JV–515.

Court of Appeals of Indiana, First District.

Aug. 15, 1990.

Harold W. Blake, Duncan & Blake, Associates, Brownsburg, for appellants.

Linley E. Pearson, Atty. Gen., David A. Arthur, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

The facts show that Billy Carnahan was committed to the Indiana Boys' School (IBS), which is located in Hendricks County, after being found a juvenile delinquent by the Bartholomew Circuit Court. In October, 1987, Carnahan was allowed to accompany family members off of the grounds of the IBS for a short furlough. Carnahan, who was fourteen years old at the time, was permitted to drive a motor vehicle around a restaurant parking lot. One of his sisters who had been sitting on the trunk of the motor vehicle fell off and suffered a fatal blow to her head. Carnahan was indicted by a Hendricks County grand jury for criminal recklessness and operating a motor vehicle without a license. Carnahan was not waived to adult criminal court, and since he was already committed to the IBS, it would appear that there was no further adjudication or commitment made. The trial court over a period of time held a series of "Review Hearings." Carnahan's natural parents were not present for these hearings. The testimony at these hearings tended to show that Carnahan's parents did a poor parenting job and were the likely cause of his being a juvenile delinquent. The amount the State had spent in keeping Carnahan incarcerated was also established.

In late August, 1989, the circuit judge of the Hendricks Circuit Court entered a judgment against William Carnahan, Sr., and Judy Carnahan, the natural parents of Billy Carnahan, in the sum of $30,341.69 payable to the Indiana Department of Correction. The sum represents incarceration costs of Carnahan.

We find it necessary to reverse the judgment of the trial court because of the woeful failure of the trial court to follow the procedures established by statute to accomplish reimbursement by the parents. In making our decision on this case it is not necessary for us to determine if the costs of incarceration are services intended to be reimbursed by the appropriate statutes.

Two preliminary matters need to be addressed. First, the State contends that much of the argument presented by the Carnahans is waived because it is matter which was not raised in a motion to correct error. While in the past the argument of the State would have been persuasive, it would appear that the newest version of Ind. Trial Rule 59(A), which dictates that when a motion to correct error is mandatory, nullifies the State's argument and the authorities cited in support thereof. Second, both parties to this appeal allude to a less than complete record in this appeal. In order to assure that the record was as complete as circumstances would allow, a writ of certiorari was issued. The return to the writ, in pertinent part, is as follows:

1. After having made a diligent search of the file and docket sheet in the Matter of Billy Carnahan, 32C01–8806–JD–155, I find no determination of delinquency of Billy Carnahan made by the Hendricks Juvenile Court. Attached please find a certified copy of the court's docket sheet.

2. After having made a diligent search of the file in the Matter of Billy Carnahan, 32C01–8806–JD–155, I find no summonses or notices of hearing or copies of same with returns of service on William Carnahan, Sr. or Judy Carnahan.

3. After having listened to the tapes of hearings held on 6–13–88, 6–20–88, 10–24–88, 11–21–88, 5–1–89 and 7–31–89 I found no evidence produced at any hearing or otherwise of the ability on the part of William Carnahan, Sr. or Judy Carnahan to pay the judgment entered against them.

The sole issue is stated as being:

Whether the trial court erred as a matter of law in entering judgment against the juvenile respondent, Billy Carnahan, a "committee" to the Indiana Department of Corrections/Indiana Boys' School, and the juvenile's parents, William Carnahan, Sr. and Judy Carnahan for the cost of the juvenile's placement at the Indiana Boys' School.

The procedure to seek reimbursement for services rendered begins with IND.CODE 31–6–4–13:

(a) This section applies only to a child alleged to be a delinquent child. . . .

(f) The juvenile court *shall inform the parent* or guardian of the estate that *if the child is adjudicated a delinquent child:*

(1) he or the custodian of the child may be required to participate in a program of care, treatment, or rehabilitation for the child;

(2) he may be held financially responsible for any services provided for the child or himself; and,

(3) he or the custodian of the child may controvert any allegations concerning his financial responsibility for any services that would be provided. (Emphasis added.)

I.C. 31–6–4–15 then provides:

Sec. 15. (a) *Upon finding that a child is a delinquent child* or that he is a child in need of services, the juvenile court shall order a probation officer or a caseworker to prepare a predispositional report that contains a recommendation for the care, treatment, or rehabilitation of the child. Alternative reports may be prepared by the child or his parent, guardian, guardian ad litem, court appointed special advocate, or custodian for consideration by the court.

(b) In addition to providing the court with a recommendation for the care, treatment, or rehabilitation of the child, the person preparing the report shall consider the necessity, nature, and extent of the participation by a parent, guardian, or custodian in a program of care, treatment, or rehabilitation for the child.

(c) The probation officer or caseworker *shall also prepare a financial report* on the parent or the estate of the child to assist the juvenile court in determining that person's financial responsibility for any services provided for the child or himself. (Emphasis added.)

In I.C. 31–6–4–18, the next step is:

(a) The cost of any services ordered by the juvenile court for any child, or the child's parent, guardian, or custodian, and the cost of returning a child under I.C. 31–6–10 shall be paid by the county. The county council shall provide sufficient funds to meet the court's requirements.

(b) The parent or guardian of the estate of a *child adjudicated a delinquent child* or a child in need of services is financially responsible for any services ordered by the court unless:

(1) the parent or guardian is unable to pay for them;

(2) payment would force an unreasonable hardship on the family; or

(3) justice would not be served by ordering payment. (Emphasis added.)

■■■ We are of the opinion that the statutes set forth give authority for a county to be reimbursed for services rendered to a child who has been adjudicated delinquent. We are also of the opinion that the failure to comply with the statutory scheme is fatal. Under the state of the record in this case it is readily apparent no adjudication of delinquency was ever made. Even if we make the doubtful assumption that the delinquency determination made in Bartholomew County was sufficient to support the action taken in Hendricks County (a question which does not need to be resolved in this opinion) it still remains absolutely clear that there is no evidence to support a finding that the parents were financially able, in whole or in part, to reimburse the expenses relating to Carnahan's incarceration.

■■■ A further complication arises when we look at the question of notice to the parents which is obviously required if at all possible. Carnahan's attorney, in his brief, states that the parents were never notified.

The State points out that docket sheet entries contain the word "notify" and in some instances an entry to "notify" the specific attorneys. An examination of the record reveals that even though there was a street address in Columbus, Indiana, for the parents, no affirmative record exists of any attempt to give notice for any of the proceedings, let alone that part which involved their reimbursement. Notification is fundamental to due process.

> It is a fundamental precept of due process that the respondent have notice reasonably calculated, under all the circumstances, to apprise the party of the pendency of the action. What is reasonable under the circumstances is determined on a case-by-case basis. (Citations omitted.)

*Abell v. Clark Cty. Dept. of Public Welfare* (1980), Ind.App., 407 N.E.2d 1209, 1210. An *ex parte* declaration that the parents were able to pay is improper. *In the Matter of the Honorable Jeffery v. Boles, Respondent, Judge of the Hendricks Circuit Court* (1990), Ind., 555 N.E.2d 1284, 1287.

 Yet another anomaly exists in that the trial court made the judgment payable to the State of Indiana. The statutes only mention reimbursement to the county and nowhere do we find the State mentioned. From what we can glean from the record it appears that the delinquency determination was never made based in part to save Hendricks County from expending funds. Since there is nothing in the record to indicate Hendricks County had made any payments to anyone on behalf of Carnahan there is nothing to reimburse.

The parties make an argument as to whether the trial court had or did not have jurisdiction to make the judgment, an argument which we deem ancillary to the fundamental question of the failure to comply with the statutory procedures specified by the General Assembly.

The action taken in this case has every appearance of using the statutes as a guise to accomplish a result which had been preordained.[1]

 The trial court also relied upon the common law in making the judgment by citing, among other authorities, *Broadstreet v. Hall* (1907), 168 Ind. 192, 80 N.E. 145. *Broadstreet* determined that a parent was liable for damages when he sent his weak and reckless rider son upon an unruly horse to deliver a message. It is true that as one legal proposition is that a parent may be responsible for damages to a third party by his child. It is an even older proposition that where a statute prescribes a remedy, it must be pursued, and resort cannot be had in such a case to the common law remedy. *Sanders v. State* (1882), 85 Ind. 318.

In conclusion we hold that there was a failure to abide by the statutory requirements to obtain reimbursement for Carnahan's incarceration and that the common law authority relied upon to sustain the judgment is, under the facts of this case, not applicable.

Judgment reversed.

BAKER and STATON, JJ., concur.

---

1. The trial court began the July hearing with the following comment:
   > "... I want to try to establish the law that a parent of a child committed to the Boys' School when the parent is found to have caused the child to commit the act that put him in Boys' School the parent should pay the costs of the child in Boys' School ..." (R.pp. 51, 52).
   >
   > \* \* \* \* \* \*
   >
   > "... I asked this case be set for a hearing on the State's motion to present evidence as to the costs of incarceration of Billy Carnahan with the eye toward establishing who should be responsible for a loss caused the State by incarceration of a person ..." (R.p. 53).

   The record contains no such motion by the State.